UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
E.H.,

                                    Plaintiff,          Case No. 21 Civ. 5454

            -against-
                                                       COMPLAINT

NEW YORK CITY, New York, Police
Commissioner DERMOT SHEA,
in his official capacity, and KEVIN P. BRUEN,
Superintendent of the New York State Police,
in his official capacity,
                                    Defendants.
-------------------------------------------------------------x

Plaintiff, by and through his attorneys, as and for his complaint states as follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory and injunctive relief, compensatory damages to include presumed monetary damages in at least a nominal amount, costs, disbursements, and reasonable statutory attorney's fees pursuant to 42 U.S.C. § 1983, § 1988 and 28 U.S.C. § 2201, for continuing harm to Plaintiff and all similarly situated individuals proximately caused by certain provisions of New York State Penal Law § 265.00, *et seq.*, Penal Law § 400.00, *et seq.*, and 38 RCNY 5.

2.      This action seeks a declaration that Penal Law §§ 265.01(1), 265.01-B, 265.02(5)(i), 265.03(2), 265.03(3), and 265.04(2) violate the Second Amendment by criminalizing the "mere possession" of handguns - by individuals who are not prohibited by state or federal law from possessing, receiving, owning, or purchasing firearms - who possess handguns in their lodging and/or residence in the State of New York.

3.      Plaintiff is being prevented from exercising his right to possess a handgun in his lodging and/or residence for self-defense by the permissive and discretionary language of Penal

1

Law § 400.00(i) and (n) and Title 38 of the Rules of the City of New York, sections 5-10(c), (m), and (n), and the threat of prosecution under Penal Law §§ 265.01(1), 265.01-B, 265.02(5)(i), 265.03(2), 265.03(3), 265.04(2) by defendants Shea and Bruen's enforcement of such statutes.

3.      New York State's handgun licensing laws under Penal Law § 400.00, *et seq.* are subjective, discretionary, and permissive, and unconstitutionally infringe upon the preexisting individual right of Plaintiff - and all other individuals who are not disqualified under state or federal law from possessing, receiving, owning, or purchasing firearms[1] - who possess a handgun in their lodging and/or residence anywhere in New York State, including New York City.

4.      This action further seeks a declaration that Title 38 of the Rules of the City of New York, sections 5-10(c), (m), and (n) are void for vagueness, and unconstitutional on their face and as applied to Plaintiff.

5.      This action further seeks a declaration that Penal Law § 400.00(b), (i) and (n) are void for vagueness, and unconstitutional on their face and as applied to Plaintiff.

6.      This action further seeks the issuance of an order temporarily enjoining during the pendency of this matter defendants Shea and Bruen, their agents, and all individuals and agencies having actual notice of the same (i) from enforcing Penal Law §§ 265.01(1), 265.01-B, 265.02(5)(i), 265.03(2), 265.03(3), 265.04(2) against all individuals - who are not disqualified under state or federal law from possessing, receiving, owning, or purchasing firearms - who possess handguns in their residence and/or lodging for self-defense anywhere in New York State.

---

[1] The term "firearms" as used herein refers to all types of guns in common use for self-defense and includes handguns, rifles and shotguns. New York State defines the term "firearm" under Penal Law § 265.00(3) as (a) any pistol or revolver; or (b)a shotgun having one or more barrels less than eighteen inches in length; or (c)a rifle having one or more barrels less than sixteen inches in length; or (d) any weapon made from a shotgun or rifle whether by alteration, modification, or otherwise if such weapon as altered, modified, or otherwise has an overall length of less than twenty-six inches; or (e)an assault weapon, but the term does not include an antique firearm.

7.    Plaintiff is not prohibited from possessing, receiving, owning, or purchasing firearms under state or federal laws, yet he is prevented by criminal statutes and the discretionary, permissive, vague, overbroad, and unconstitutional licensing regulations from exercising the rights protected by the Second Amendment.

8.    If Plaintiff were to exercise his right to possess a handgun in his home for self-defense, he would be subject to criminal prosecution under Penal Law §§ 265.01(1), 265.01-B, 265.02(5)(i), 265.03(2), 265.03(3), and 265.04(2).

9.    Plaintiff cannot exercise his preexisting rights to possess arms in common use for self-defense, which is a preexisting, fundamental and protected right under the Second Amendment, without the threat of criminal prosecution, incarceration, and the resulting forfeiture of those preexisting rights.

10.    Without the requested declaratory and injunctive relief, Plaintiff will continue to suffer irreparable harm, which is presumed by virtue of the constitutional violations.

## JURISDICTION AND VENUE

11.    The Court's jurisdiction over Plaintiff' federal claims is authorized pursuant to 28 U.S.C. §§ 1331 in that this action arises under the Constitution and laws of the United States and under 28 U.S.C. § 1343 in that this action seeks to redress the deprivation, under of color of the laws, statutes, ordinances, regulations, customs and usages of the defendant governments of rights, privileges or immunities secured by the United States Constitution.

12.    The Court's jurisdiction over the Plaintiff' claims for injunctive and declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

13.    The Court's jurisdiction over the Plaintiff' federal claims, damages, and statutory attorney's fees is authorized pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

14. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this district.

## THE PARTIES

15. Plaintiff E.H. is a United States citizen and a resident of Kings County, New York.

16. Defendant New York City is a governmental subdivision of New York State.

17. Defendant Dermot Shea is the Police Commissioner for the New York City Police Department ("NYPD") and a statutory handgun licensing officer under Penal Law § 400.00. Defendant Shea is sued in his official capacity. All licensing applications, issuances, and denials of handgun and rifle/shotgun applications are processed through the NYPD License Division.

18. As the NYPD Police Commissioner, Commissioner Shea is the chief law enforcement officer in New York City. In his official position, Commissioner Shea has the authority to file charges to prosecute criminal and/or non-criminal offenses taking place in the five boroughs of New York City, to wit, New York County (Manhattan), Kings County (Brooklyn), Queens County, Richmond County (Staten Island), and Bronx County.

19. Defendant Kevin P. Bruen is the Acting Superintendent of the New York State Police whose principal place of business is in Albany (Albany County), New York. Defendant Bruen is sued in his official capacity. In that capacity, Bruen is the chief law enforcement officer for the State of New York and has the authority to file charges to prosecute criminal and/or non-criminal offenses taking place throughout New York State.

## MATERIAL FACTS

20.     Handguns, rifles, and shotguns are weapons in "common use" for self-defense.

21.     Handguns are the most popular weapon chosen by Americans for self-defense in the home.

22.     There is no federal statute criminalizing the "mere possession" of a handgun by a person who is not prohibited under any state or federal law from possessing, receiving, owning, or purchasing firearms.

23.     The possession of a handgun by a non-disqualified person for self-protection in his/her home is a constitutional right protected by the Second Amendment. *D.C. v Heller*, 554 U.S. 570 (2008).

24.     E.H. is a resident of Brooklyn, New York.

25.     E.H. is identified herein only by his initials to protect his confidential medical information, which the NYPD License Division required him to disclose during his application for a license to possess a handgun in his residence.

26.     E.H. is not prohibited under any state or federal law from possessing, receiving, owning, or purchasing firearms.[2]

27.     The NYPD License Division is authorized to approve/deny applications for handgun licenses for the 5 boroughs of New York City: Manhattan, Brooklyn, Queens, Bronx, and Staten Island.

28.     E.H. applied to the NYPD License Division for a license to possess handguns in his home.

---

[2] The term "firearm" is used herein to refer to all guns, including handguns, rifles, and shotguns.

29.     E.H. provided his fingerprints, current address, birth certificate, social security card, photograph identification/driver's license, and a release for the licensing officer to perform a mental health check through the New York SAFE Act mental health database.

30.     As a condition of processing an application for a firearm license, the NYPD License Division requires all applicants, including E.H., to disclose whether they have "ever used narcotics, controlled substances, or tranquilizers".

31.     If E.H. refused to disclose his private, confidential medical information, his application would not have been processed.

32.     If E.H. answered "no", he would be subject to arrest and prosecution for lying on a government form.

33.     The requirement that applicants disclose such information violates the Second Amendment.

34.     The medication question is unconstitutionally overbroad, vague and temporally unlimited.

35.     E.H. responded on "yes" on the application.

36.     The License Division then required E.H. to provide details regarding the names, strength, and dosage of the medications.

37.      The License Division then required E.H. to provide a letter from the doctor(s) who prescribed the medication.

38.     E.H. has general anxiety.

39.     E.H. has never been arrested or charged with a crime and is not "dangerous".

40.   E.H. is not "insane", he has not been "adjudicated as a mental defective" or "involuntarily committed to a mental institution" nor has he been "civilly confined" under Article 10 of the Mental Hygiene Laws.

41.   E.H. has no mental health based prohibitors to possessing, receiving, owning, or purchasing firearms.

42.   E.H.'s board certified psychiatrist provided a letter to the License Division stating:

> "[E.H.] has been my patient for several years. He is being treated for generalized anxiety disorder and takes Klonopin., abilify, and Zoloft. On this regimen he is entirely free of symptoms. His judgment is good and he has never demonstrated any tendency to be violent. It is my medical opinion that [E.H.] can safely possess a firearm."

43.   The License Division denied E.H.'s application for a handgun license.

44.   The License Division based their denial of E.H.'s application on factors having no longstanding, historically accepted or recognized grounds for the disqualification of firearms possession.

45.   If E.H. presented a danger to himself or others, which he is not and never has been, his psychiatrist would be obligated to report him pursuant to Mental Hygiene Law § 9.46 and/or admit him to a mental health facility.

46.   E.H.'s psychiatrist has never reported E.H. under MHL § 9.46 or admitted him to a mental health facility.

46.   If E.H. were a person disqualified for mental health reasons from possessing, receiving, owning, or purchasing firearms, which he is not, a mental health check through the New York SAFE Act Office would reveal that he is a prohibited person and would prevent his purchase of firearms.

47. The New York SAFE Act Office database contains the personal identifying information of individuals who are prohibited from possessing and/or purchasing firearms based on mental health prohibitor that occurred in New York State.

48. If E.H. were a person disqualified for mental health reasons from possessing, receiving, owning, or purchasing firearms, which he is not, a background check through the NICS system (National Instant Criminal Background Check System) mental health check through the New York SAFE Act Office would reveal that he is a prohibited person and would prevent his purchase of firearms.

49. E.H.'s personal identifying information is not contained in the SAFE Act database.

50. E.H. has never even been subject to "emergency observation" for mental health reasons.

51. Defendants have the resources, means, and/or ability to perform mental health checks through the SAFE Act database on those applying for a firearm license to ascertain whether s/he is disqualified from possessing, receiving, owning, or purchasing firearms by reason of being "insane", "adjudicated as a mental defective" or "involuntarily committed to a mental institution".

52. The License Division denied E.H.'s application under Penal Law § 400.00(1)(b), (i), and (n), and under 38 RCNY 5-10(c), (m), (n) and "all applicable grounds under § 400.00(1) and 38 RCNY 5-10."

53. E.H. desires to possess a handgun in his home for self-protection.

54. E.H. cannot possess a handgun in his home for self-defense because he would be subject to criminal penalties under Penal Law §§ 265.01(1), 265.01-B, 265.02(5)(i),

265.03(2), 265.03(3), 265.04(2), including incarceration, fines, and forfeiture of his preexisting rights protected by the Second Amendment.

55.     If E.H. possessed a handgun in his home for self-defense, he would be subject to criminal penalties by Defendants under Penal Law §§ 265.01(1), 265.01-B, 265.02(5)(i), 265.03(2), 265.03(3), 265.04(2), including incarceration, fines, and forfeiture of his preexisting rights protected by the Second Amendment.

### I. Plaintiff seeks a declaration that Penal Law §§ 265.01(1), 265.01-B, 265.02(5)(i), 265.03(2), 265.03(3), 265.04(2) Violate the Second Amendment

56.     The Second Amendment protects the right to keep and bear arms for self-defense.

57.     The Second Amendment applies to federal and state government action.

58.     "The Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms." *Caetano v Massachusetts*, 577 US 411 (2016).

59.     The Second Amendment applies to handguns, rifles, and shotguns equally.

60.     Penal Law sections 265.01(1), 265.01-B, 265.02(5)(i), 265.03(2), 265.03(3), and 265.04 (2) criminalize a ban on the "mere possession" of handguns.

61.     Penal Law sections 265.01(1), 265.01-B, 265.02(5)(i), 265.03(2), 265.03(3), and 265.04 (2) criminalize the "mere possession" of handguns by people who are not legally disqualified from possessing, receiving, owning, or purchasing firearms under state or federal law.

62.     No provision of Penal Law sections 265.01(1), 265.01-B, 265.02(5)(i), 265.03(2), 265.03(3), and 265.04 (2) indicates that such criminal statutes apply ***only*** to people who are legally disqualified from possessing, receiving, or purchasing firearms.

63.     Penal Law sections 265.01(1), 265.01-B, 265.02(5)(i), 265.03(2), 265.03(3), and 265.04 (2) constitute a complete ban on the "mere possession" of handguns.

64. By banning and criminalizing the "mere possession" of constitutionally protected activity, Penal Law sections 265.01(1), 265.01-B, 265.02(5)(i), 265.03(2), 265.03(3), and 265.04 (2) violate the Second Amendment.

65. Penal Law sections 265.01(1), 265.01-B, 265.02(5)(i), 265.03(2), 265.03(3), and 265.04 (2) violate the Second Amendment and should be stricken as unconstitutional, both facially and as applied to Plaintiff.

66. In New York State, a non-prohibited person one cannot possess a handgun without first applying for and receiving the permission of the government – whether the possession of a handgun takes place in one's home or in public.

67. Requiring permission from the government before exercising the basic right to keep and bear arms, which "shall not be *infringed*" – encroached on, interfered with, trespassed upon – violates the Second Amendment.

68. As such, Penal Law sections 265.01(1), 265.01-B, 265.02(5)(i), 265.03(2), 265.03(3), and 265.04 (2) are unconstitutional on their face and as applied to all persons who have no disqualifiers to the possession, receipt, or purchase of firearms, including E.H.

69. Defendants, their officers, agents, servants, employees, and all persons acting in concert with the defendants who receive actual notice of the injunction should be permanently enjoined from implementing and/or enforcing Penal Law sections 265.01(1), 265.01-B, 265.02(5)(i), 265.03(2), 265.03(3), and 265.04 (2) against any individual who has no longstanding, historically recognized disqualifiers to the possession, receipt, or purchase of firearms, including E.H.

## II. Plaintiff seeks a declaration that Penal Law § 400.00(1)(i), (n) and 38 RCNY 5-10 (c), (m), and (n), violate the Second Amendment

70.     A permit to lawfully possess a handgun "shall not" be issued if the applicant does not meet the eligibility criteria of Penal Law § 400.00(1).

71.     The challenged eligibility criteria under Penal Law § 400.00(1) 38 RCNY 5-10 have no longstanding historically recognized basis as disqualifiers to firearm possession and should be declared unconstitutional, stricken, and enjoined from enforcement.

72.     Under New York and Second Circuit case law, the statutory licensing officers are imbued with "broad discretion" to decide who can and cannot possess a handgun for self-defense.

73.     A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all; constitutional rights must be protected whether or not future legislatures or (yes) even future judges think that scope too broad. *Heller*, 554 U. S. at 634-635 (internal quotation marks omitted).

74.     When licensing statutes grant "broad discretion" to licensing officials, the "risks are sufficiently great" warranting a remedy that "strike[s] the licensing law in its entirety". See, e.g., *The Tool Box v. Ogden City Corp.*, 355 F.3d 1236, 1241 (10th Cir.2004) (en banc).

75.     State and federal jurisprudence in this circuit deems the possession of a handgun to be a privilege, not a right protected by the Second Amendment, that is subject to the "broad discretion" of a licensing officer who, by statute, has been delegated "extraordinary power" in those matters.[3]

---

[3] *Papaioannou v Kelly*, 14 AD3d 459, 459 (1st Dept 2005); *Parker v Nastasi*, 97 AD2d 547, 467 (2d Dep't 1983), aff'd 62 NY2d 714 (1984) ("The issuance of a handgun license [and thus, the possession of a handgun] is not a right, but a privilege subject to reasonable regulation"); *Maloney v. Singas*, 106 F. Supp. 3d 300, 311 (E.D.N.Y. 2015) ("district courts in this Circuit have continually chosen to apply intermediate scrutiny to general challenges under the Second Amendment, even when reviewing statutes or laws that may restrict the possession of weapons in the home" (internal quotes omitted); *Boss v Kelly*, 306 F App'x 649, 650 (2d Cir 2009) ("Under New York law, it is well settled

**Penal Law 400.00(1)(n)**

76.     Penal Law § 400.00(1)(n) prohibits handgun ownership by an individual if a licensing officer subjectively believes there is "good cause" to deny the license application.

77.     Penal Law §400.00(1)(n) should be declared facially unconstitutional and stricken from the statute as it is a discretionary, subjective, permissive factor used to deny the free exercise of the Second Amendment to non-prohibited people.

78.     Defendants, and all those having actual notice thereof, should be permanently enjoined from enforcing and/or implementing their provisions.

**Penal Law § 400.00(1)(i) and 38 RCNY 5-10(c)**

79.     Penal Law § 400.00(1)(i) prohibits handgun possession by any individual "who has stated whether he or she has ever suffered any mental illness."

80.     38 RCNY 5-10(c) prohibits handgun possession by an applicant "who has, or is reasonably believed to have, a disability or condition that may affect the ability to safely possess or use a handgun, including but not limited to alcoholism, drug use or mental illness."

81.     The *sui generis* events and conditions barring the possession of firearms based on longstanding, historically recognized disqualifiers to gun possession for mental health reasons only encompasses psychiatrically dangerous individuals.

82.     An individual who was not "adjudicated as mentally defective", involuntarily committed to a psychiatric hospital, "criminally insane", or "civilly confined" is not a "prohibited person" disqualified from firearm possession for mental health reasons.

---

that the possession of a handgun license is a privilege, not a right, which is subject to the broad discretion of the New York City Police Commissioner."), see also, *Avitabile v. Beach*, 277 F. Supp. 3d 326 (N.D.N.Y. 2017).

83.     Under federal law, even a person who was subject to "emergency observation" and/or a voluntary admission to a mental institution is not prohibited from possessing firearms.

84.     Penal Law § 400.00(1)(i) is unconstitutionally overbroad and vague, facially and as applied to Plaintiff.

85.     The term "mental illness" is vague and overbroad on its face and as applied to E.H.

86.     The term "mental illness" includes traits and conditions that do not constitute longstanding, historically recognized prohibitors to firearm possession.

87.     The term "mental illness" includes traits and conditions that do not include being adjudicated as mentally defective or being involuntarily committed to a mental health facility.

88.     The term "mental illness" is confusing to the ordinary person and improperly creates the assumption that individuals seeking a handgun to protect themselves must disclose their medical records, medications, and confidential health information to licensing officers.

89.     Providing licensing officers "broad discretion" to determine whether one "is reasonably believed to have" a disqualifying disability or condition is vague, overbroad, and unconstitutional both facially and as applied to E.H.

90.     Licensing officers, like the NYPD License Division here, as well as licensing officers in other counties in New York State, require handgun license applicants like E.H. to sign HIPAA-compliant authorizations for the release of medical and mental health information and/or provide confidential mental health and medical information to the licensing officers during the application process.

91.     Handgun license applicants have no confidentiality and/or privileged communications with a licensing officer.

92.     38 RCNY 5-10(c) is overbroad and not limited in scope in that the phrase "including but not limited to" does not present a "bright line" list of events and/or conditions that constitute prohibitors to firearm possession.

93.     The terms "disability" and "condition" are overly broad and vague.

94.     Generally having a "disability" is not a historically accepted disqualifier to the possession of firearms.

95.     The statute is unconstitutional in that, on its face, it precludes "disabled" people – one of the most vulnerable population groups - from the ability to protect themselves.

96.     The term "mental illness" is overbroad and vague.

97.     The term "mental illness" is not defined in the statute.

98.     The term "mental illness" is subjectively defined by the discretionary licensing officer.

99.     Having a "mental illness" does not mean an individual is "dangerous" or a "danger to self or others."

100.    Any number of traits can be considered a "mental illness" that are not also disqualifiers to firearm possession.

101.    "Mental illness" is not synonymous with being "adjudicated as mentally defective".

102.    "Mental illness" is not synonymous with being "involuntarily committed to a psychiatric facility".

103.    Under the challenged regulations, the term "mental illness" is fully open to being subjectively defined and/or determined by a licensing officer with "broad discretion".

104.    Having a "mental illness" is not synonymous with being "dangerous", a "danger to self or others", or criminally insane.

14

105.     A denial of a firearm license because a non-prohibited person has a medical condition that "may" affect their ability to safely possess or use a handgun does not constitute a longstanding, historically recognized basis for the denial of the right to possess firearms.

106.     38 RCNY 5-10(c) is unconstitutional facially and as applied to E.H.

107.     Penal Law § 400.00(1)(i) and 38 RCNY 5-10(c) should be stricken and declared unconstitutional, both facially and as applied to E.H.

108.     Defendants, their officers, agents, servants, employees, and all persons acting in concert with the defendants who receive actual notice of the injunction should be permanently enjoined from enforcing and/or implementing Penal Law § 400.00(1)(i) and 38 RCNY 5-10(c).

**The License Division's Required Disclosure of Private Medical, Medication, and Mental Health-Related Information**

109.     Under the guise of enforcing 38 RCNY 5-10(c) and § 400.00(1)(i), the NYPD License Division requires applicants to disclose whether they take medication, the type of medication, and the prescription potency and frequency.

110.     Under the guise of enforcing 38 RCNY 5-10(c) and § 400.00(1)(i), and as part of its routine licensing application process, the NYPD License Division required E.H. to sign a release to obtain sensitive and confidential medical and mental health information.

111.     As a condition to processing an application for a firearm license, the NYPD License Division requires applicants to disclose whether they take medication, the type of medication they take, and the prescription potency and frequency of such medication.

112.     The NYPD License Division's requirement that applicants disclose their private medical, medication related, and/or mental health information as a condition of applying for a license to possess firearms violates the Second Amendment.

15

113.     The License Division required E.H. to disclose the above information as a condition to processing his handgun license application.

114.     As part of its routine licensing application process, the NYPD License Division required E.H. to sign a release allowing them to obtain sensitive and confidential medical, pharmacological, and mental health information.

115.     The information required by the License Division for an application to even be considered was not limited to signing a waiver for a mental health check through the New York SAFE Act database.

116.     The requirement that applicants disclose their private medical, medication related, and/or mental health information as a condition of applying for and/or obtaining a license to possess firearms violates the Second Amendment.

117.     Defendants,  their officers, agents, servants, employees, and all persons acting in concert with the defendants who receive actual notice of the injunction should be permanently enjoined from enforcing and/or implementing should be permanently enjoined from inquiring about, and requiring that applicants disclose, an applicant's medical information, information related to their mental health, and pharmacy and prescription information.

## 38 RCNY 5-10(m)

118.     Under 38 RCNY 5-10(m), "good cause" to deny a handgun license exists where "the applicant fails to cooperate with the License Division's investigation of her/his application or fails to provide information requested by the License Division or required by this chapter.

119.     "Good cause" exceptions prevent typical non-prohibited persons citizens from firearm possession and precludes the typical member of society from self-protection. See, e.g., *Wrenn v. District of Columbia*, 864 F.3d 650, 665-666 (DC Cir 2017) ("good cause" necessarily

causes a ban on most residents' right to possess firearms, although these residents are no more dangerous with a gun than the next person).

120.    "Failing to cooperate with the License Division" is facially unconstitutional as overbroad and vague facially and as applied to Plaintiff.

121.    The grounds "failing to cooperate with the License Division" to deny an application for a handgun license violates the Second Amendment.

122.    Where an individual provides his/her fingerprints, current address, birth certificate, social security card, photograph identification/driver's license, and a release for the licensing officer to perform a mental health check through the New York SAFE Act mental health database, "failing to cooperate" in any other manner violates the Second Amendment.

123.    Denying a non-prohibited person, like Plaintiff, the right to possess firearms for "failing to cooperate with the License Division" violates the Second Amendment.

124.    Plaintiff complied with the License Division's demands that he provide his medical information and prescription information.

125.    Plaintiff provided a letter from his *psychiatrist* – a medical doctor - indicating his medications and the fact that Plaintiff "can safely possess a firearm."

126.    New York City denied Plaintiff's handgun license application under 38 RCNY 5-10(m) because Plaintiff did not provide more specific information as demanded by the non-medical staff at the NYPD License Division so they could determine whether Plaintiff should be able to protect himself at home.

127.    New York City denied Plaintiff's handgun license application under 38 RCNY 5-10(m) because Plaintiff did not provide the "dosage" and number of pills per day of the medication that Plaintiff is prescribed.

128.     38 RCNY 5-10(m) should be stricken and declared unconstitutional, both facially and as applied to E.H., and Defendants, their officers, agents, servants, employees, and all persons acting in concert with the defendants who receive actual notice of the injunction should be permanently enjoined from enforcing and/or implementing 38 RCNY 5-10(m).

**38 RCNY 5-10(n)**

129.     38 RCNY 5-10(n) allows the denial of a handgun license where "Other information demonstrates an unwillingness to abide by the law, a lack of candor towards lawful authorities, a lack of concern for the safety of oneself and/or other persons and/or for public safety, and/or other good cause for the denial of the license."

130.     The discretionary power imbued to licensing officers under 38 RCNY 5-10(n) violates the Second Amendment.

131.     The term "unwillingness" is overbroad and vague.

132.     The term "unwillingness" is not defined in the statute.

133.     The term "other good cause for the denial of the license" violates the Second Amendment.

134.     Where an individual provides his/her fingerprints, current address, birth certificate, social security card, photograph identification/driver's license, and a release for the licensing officer to perform a mental health check through the New York SAFE Act mental health database, "failing to cooperate" in any other manner violates the Second Amendment.

135.     Denying a non-prohibited person, like Plaintiff, the right to possess firearms for "failing to cooperate with the License Division" violates the Second Amendment.

136.     38 RCNY 5-10(n) should be stricken and declared unconstitutional, both facially and as applied to E.H.

137.     Defendants, their officers, agents, servants, employees, and all persons acting in concert with the defendants who receive actual notice of the injunction should be permanently enjoined from enforcing and/or implementing should be permanently enjoined from enforcing and/or implementing 38 RCNY 5-10(n).

138.     Penal Law §400.00(1)(n) cannot meet any standard of scrutiny, including strict scrutiny and intermediate scrutiny, because the regulations are subjective and discretionary and prevent the free exercise of a protected constitutional right.

139.     38 RCNY 5-10 (c), (m) and (n) cannot meet any standard of scrutiny, including strict scrutiny and intermediate scrutiny, because the regulations are subjective and discretionary and prevent the free exercise of a protected constitutional right.

140.     The challenged New York State and New York City regulations must be declared unconstitutional and stricken from the statute as they are not longstanding, historically recognized reasons to deny the free exercise of the second Amendment.

141.     By virtue of New York City's regulations under 38 RCNY 5-10 (c), (m), and (n) and Penal Law § 400.00(1)(i) and (n),  E.H. has been caused to suffer the invasion of his privacy, embarrassment, the *per se* violation of his constitutional right under the Second Amendment for which damages in at least a nominal amount are presumed, compensatory and emotional harm damages, economic monetary damages in an amount to be determined by a trier of fact.

### DECLARATORY JUDGMENT ALLEGATIONS

142.     There is an actual and present controversy between the parties. Plaintiffs contends his Second Amendment rights are being violated in that: (1) Penal Law sections 265.01(1), 265.01-B, 265.02(5)(i), 265.03(2), 265.03(3), and 265.04(2) criminalize the "mere possession" of handguns by people who are not legally disqualified from possessing, receiving, owning, or

purchasing firearms under state or federal law violating their fundamental right to self-protection; (2) Penal Law § 400.00(1)(n) prohibits handgun ownership by an individual if a licensing officer subjectively believes there is "good cause" to deny the license application; (3) Penal Law § 400.00(1)(i) prohibits handgun possession by any individual "who has stated whether he or she has ever suffered any mental illness"; (4) 38 RCNY 5-10(c) prohibits handgun possession by an applicant "who has, or is reasonably believed to have, a disability or condition that may affect the ability to safely possess or use a handgun, including but not limited to alcoholism, drug use or mental illness"; (5) NYPD License Division's requirement that applicants for a handgun license disclose protected, confidential, and private medical and mental health information; (6) 38 RCNY 5-10(m) generally imbues "broad discretion" to deny a handgun license for failing to cooperate with the License Division's investigation of her/his application or fails to provide information requested by the License Division or required by this chapter; (7) 38 RCNY 5-10(n) allows the denial of a handgun license where "Other information demonstrates an unwillingness to abide by the law, a lack of candor towards lawful authorities, a lack of concern for the safety of oneself and/or other persons and/or for public safety, and/or other good cause for the denial of the license."

143. Defendants deny these contentions.

144. Plaintiff seeks a judicial declaration that the above enumerated regulations, statutes and policies violate the Second Amendment.

145. Plaintiff should not have to risk criminal prosecution in order to exercise the core fundamental rights detailed herein.

## INJUNCTIVE RELIEF ALLEGATIONS

146.    Plaintiff continues to suffer a present and justiciable harm in violation of his preexisting rights protected by the Second Amendment as a result of Defendants' enforcement and implementation of (1) Penal Law sections 265.01(1), 265.01-B, 265.02(5)(i), 265.03(2), 265.03(3), and 265.04(2), which criminalize the "mere possession" of handguns - even by people who are not legally disqualified from possessing, receiving, owning, or purchasing firearms under state or federal law; (2) Penal Law § 400.00(1)(n) which imbues "broad discretion" in a licensing officer to deny the right to possess a handgun is s/he subjectively believes there is "good cause"; (3) Penal Law § 400.00(1)(i), which handgun possession based on mental health related factors falling outside of being "adjudicated as mentally defective", "criminally insane" "involuntarily committed to a mental health facility" and/or "being civilly confined"; (4) 38 RCNY 5-10(c), which prohibits handgun possession by an applicant who has, or is reasonably believed to have, a disability or condition that may affect the ability to safely possess or use a handgun, including but not limited to mental illness; (5) NYPD License Division's requirement that applicants for a handgun license disclose protected, confidential, and private medical and mental health information; (6) 38 RCNY 5-10(m), which imbues "broad discretion" in a licensing officer to deny a handgun license for "failing to cooperate" with the License Division's investigation of her/his application or fails to provide information requested by the License Division or required by this chapter even where the applicant has no prohibitors to firearm possession; (7) 38 RCNY 5-10(n), which allows the denial of a handgun license where "other information demonstrates an unwillingness to abide by the law, a lack of candor towards lawful authorities, a lack of concern for the safety of oneself and/or other persons and/or for public

safety, and/or other good cause for the denial of the license, even where the applicant has no prohibitors to firearm possession.

147.    Defendants deny the contentions stated herein.

148.    Plaintiff should not have to risk criminal prosecution in order to exercise the core fundamental rights detailed herein.

**COUNT I**
**Penal Law 265.01(1), 265.01-B, 265.02(5)(i), 265.03(2), 265.03(3), and 265.04(2)**
**Criminalizing "mere possession"**

149.    Repeats and realleges paragraphs "1" through and including "149" as if set forth in their entirety herein.

150.    Under the theory that the criminalization of the "mere possession" of handguns by individuals who are not prohibited under federal or state law from the possession, receipt, or purchase of firearms violates the Second Amendment.

151.    Defendants are liable to Plaintiff for violations of his constitutional rights as protected by the Second Amendment. 42 U.S.C. § 1983.

**COUNT II**
**Penal Law § 400.00(1)(n) - "Good Cause" to Deny**

152.    Repeats and realleges paragraphs "1" through and including "151" as if set forth in their entirety herein.

153.    Under the theory that regulations imbuing the government with discretion to deny the right of a non-prohibited person to possess firearms violates the Second Amendment.

154.    The "good cause" ground to deny a handgun license under Penal Law § 400.00(1)(n) violates the Second Amendment.

22

155.     Defendants are liable to Plaintiff for violations of his constitutional rights as protected by the Second Amendment. 42 U.S.C. § 1983.

## COUNT III
## Penal Law § 400.00(1)(i) – Mental Health Disqualifications

156.     Repeats and realleges paragraphs "1" through and including "155" as if set forth in their entirety herein.

157.     Under the theory that the mental health disqualifiers to handgun possession under Penal Law § 400.00(1)(i) are overbroad and not longstanding, historically recognized disqualifiers to firearm possession, such as being "adjudicated as mentally defective", "criminally insane" "involuntarily committed to a mental health facility" and/or "being civilly confined" violates the Second Amendment.

158.     Defendants are liable to Plaintiff for violations of his constitutional rights as protected by the Second Amendment. 42 U.S.C. § 1983.

## COUNT IV
## 38 RCNY 5-10(c) – Mental Health Disqualifications

159.     Repeats and realleges paragraphs "1" through and including "158" as if set forth in their entirety herein.

160.     Under the theory that the mental health disqualifiers to handgun possession under 38 RCNY 5-10(c) are overbroad and not longstanding, historically recognized disqualifiers to firearm possession, such as being "adjudicated as mentally defective", "criminally insane" "involuntarily committed to a mental health facility" and/or "being civilly confined" violates the Second Amendment.

161.     Defendants are liable to Plaintiff for violations of his constitutional rights as protected by the Second Amendment. 42 U.S.C. § 1983.

## COUNT V
### NYPD License Division Policy – Disclosure of Private Health Information

162.     Repeats and realleges paragraphs "1" through and including "161" as if set forth in their entirety herein.

163.     Under the theory that the NYPD License Division's requirement that applicants for a handgun license disclose protected, confidential, and private medical and mental health information as a condition precedent to being considered for a handgun license violates the Second Amendment.

164.     Defendants are liable to Plaintiff for violations of his constitutional rights as protected by the Second Amendment. 42 U.S.C. § 1983.

## COUNT VI
### 38 RCNY 5-10(m) – Discretion to Deny for Noncompliance

165.     Repeats and realleges paragraphs "1" through and including "164" as if set forth in their entirety herein.

166.     Under the theory that discretion to deny a handgun license to a non-prohibited person for "failing to cooperate" violates the Second Amendment.

167.     Under the theory that discretion to deny a handgun license to a non-prohibited person for "failing to cooperate", where an applicant has provided his/her birth certificate, photo identification, social security card, address, fingerprints, and a signed release to perform a New York SAFE Act database check for mental health purposes violates the Second Amendment.

168.     Defendants are liable to Plaintiff for violations of his constitutional rights as protected by the Second Amendment. 42 U.S.C. § 1983.

## COUNT VII
### 38 RCNY 5-10(n) - Discretion to Deny Based on Factors Having No Longstanding, Historically Recognized Grounds as Disqualifiers to Firearm Possession

169.    Repeats and realleges paragraphs "1" through and including "168" as if set forth in their entirety herein.

170.    Under the theory that discretion to deny a handgun license to a non-prohibited person for any subjective reason having no longstanding, historically recognized basis as a disqualifier to firearm possession violates the Second Amendment.

171.    Under the theory that discretion to deny a handgun license to a non-prohibited person where "other information demonstrates an unwillingness to abide by the law, a lack of candor towards lawful authorities, a lack of concern for the safety of oneself and/or other persons and/or for public safety, and/or other good cause for the denial of the license" even where the applicant has no prohibitors to firearm possession under state or federal law violates the Second Amendment.

172.    Defendants are liable to Plaintiff for violations of his constitutional rights as protected by the Second Amendment. 42 U.S.C. § 1983.

## COUNT VIII
### *Monell Liability – New York City, New York*

173.    Repeats and realleges paragraphs "1" through and including "172" as if set forth in their entirety herein.

174.    Under the theory that New York City has a policy of conditioning the processing of and/or approval of a handgun license based on the requirement that applicants disclose private medical, mental health, and/or pharmacological information violates the Second Amendment.

175.    Defendant New York City, New York is liable under *Monell* to Plaintiff for violations of his constitutional rights pursuant to 42 U.S.C. § 1983.

25

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff request that judgment be entered in their favor and against Defendants as follows:

• An Order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons acting in concert with Defendant who receive actual notice of the injunction, from enforcing and implementing Penal Law 265.01(1), 265.01-B, 265.02(5)(i), 265.03(2), 265.03(3), and 265.04(2) against individuals who are not prohibited under state or federal law from possessing, purchasing, or receiving firearms;

• An Order preliminarily and permanently enjoining Defendant, his officers, agents, servants, employees, and all persons acting in concert with Defendant who receive actual notice of the injunction, from exercising any discretion to deny an application for a handgun license to any individual who is not prohibited under state or federal law from possessing, purchasing, or receiving firearms;

• An Order preliminarily and permanently enjoining Defendant, his officers, agents, servants, employees, and all persons acting in concert with Defendant who receive actual notice of the injunction, from enforcing and implementing Penal Law § 400.00(1)(i);

• An Order preliminarily and permanently enjoining Defendant, his officers, agents, servants, employees, and all persons acting in concert with Defendant who receive actual notice of the injunction, from enforcing and implementing Penal Law § 400.00(1)(n);

• An Order preliminarily and permanently enjoining Defendant, his officers, agents, servants, employees, and all persons acting in concert with Defendant who receive actual notice of the injunction, from enforcing and implementing 38 RCNY 5-10(c);

- An Order preliminarily and permanently enjoining Defendant, his officers, agents, servants, employees, and all persons acting in concert with Defendant who receive actual notice of the injunction, from requiring applicants for a handgun license to disclose private and/or confidential medical, mental health and/or pharmacological information in the course of applying for a handgun license;

- An Order preliminarily and permanently enjoining Defendant, his officers, agents, servants, employees, and all persons acting in concert with Defendant who receive actual notice of the injunction, from enforcing and implementing 38 RCNY 5-10(m);

- An Order preliminarily and permanently enjoining Defendant, their officers, agents, servants, employees, and all persons acting in concert with Defendant who receive actual notice of the injunction, from enforcing and implementing 38 RCNY 5-10(n);

- A declaration Penal Law Penal Law 265.01(1), 265.01-B, 265.02(5)(i), 265.03(2), 265.03(3), and 265.04(2) violates the Second Amendment rights of individuals who are not prohibited under state or federal law from possessing, purchasing, or receiving firearms;

- A declaration that Penal Law § 400.00(1)(i) violates the Second Amendment rights of individuals who are not prohibited under state or federal law from possessing, purchasing, or receiving firearms;

- A declaration that Penal Law § 400.00(1)(n) violates the Second Amendment rights of individuals who are not prohibited under state or federal law from possessing, purchasing, or receiving firearms;

- A declaration that 38 RCNY 5-10(c) violates the Second Amendment rights of individuals who are not prohibited under state or federal law from possessing, purchasing, or receiving firearms;

•       A declaration that 38 RCNY 5-10(m) violates the Second Amendment rights of

individuals who are not prohibited under state or federal law from possessing, purchasing, or

receiving firearms;

•       A declaration that 38 RCNY 5-10(n) violates the Second Amendment rights of

individuals who are not prohibited under state or federal law from possessing, purchasing, or

receiving firearms;

•       An award of compensatory damages in at least a nominal amount;

•       An award of reasonable statutory attorney's fees, costs, and disbursements, under 42

U.S.C. § 1988 and any other applicable law; and

•       That this Court grant such further, other, and alternative relief as the Court deems just

and proper.

Dated: June 22, 2021

                                        Respectfully submitted,


                                        THE BELLANTONI LAW FIRM, PLLC


                        By:       _____/s/_____
                                        Amy L. Bellantoni (AB3061)
                                        *Attorney for Plaintiff*
                                        2 Overhill Road, Suite 400
                                        Scarsdale, New York 10583
                                        abell@bellantoni-law.com